## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CURTIS ANTOINE KEIL**                          **CIVIL ACTION**

**VERSUS**                                       **NO. 18-9410**

**SANDY MCCAIN, WARDEN**                         **SECTION "I"(4)**

### REPORT AND RECOMMENDATION

  This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.  Factual Background

  The petitioner, Curtis Keil ("Keil"), is a convicted inmate currently incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[2]  On December 15, 2008, Keil was indicted by a Washington Parish Grand Jury for the second degree murder of Terrance Donnel Harris.[3]  He entered an initial plea of not guilty to the charge on January 5, 2009.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 19, Bill of Indictment, 12/15/08.

[4]St. Rec. Vol. 2 of 19,  Minute Entry, 1/5/09.

The record reflects that,[5] on the afternoon of October 6, 2008, Harris was standing on Ann Street in Bogalusa, Louisiana, talking to several family members. A man, later identified as Keil, drove up to a group of people in a white Lincoln with a Texas license plate and exited the car. Keil and Harris began to argue. Keil then pulled out a handgun and shot at Harris, striking him four times in the head and neck. Keil got back in the car and drove away. Harris died as a result of his wounds.

Immediately after the incident, several eyewitnesses, who were familiar with Keil, including Katrina Hall, Emory Moses, Kenneth Hall, Sr., and Gregory Brown, told the police that Keil was the shooter. After receiving this information, Bogalusa police officers located Keil at his mother's home on City Limits Road. The officers also found the white Lincoln described by the eyewitnesses. The police officers were unable to recover the firearm used in the shooting.

Keil's competency was questioned in September 2009, and after multiple evaluations, Keil was found competent to proceed on April 4, 2011.[6] On May 2, 2011, the prosecutor advised that Keil had made no statements to law enforcement and that there was no line up ever conducted and the defense's motions related to those matters were denied as moot.[7]

Keil was tried before a jury on October 24 through 27, 2011.[8] On October 24, 2011, the State filed a notice of intent to introduce evidence of other offenses under La. Code Evid. art.

---

[5]The facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Keil*, No. 2012 KA 1976, 2013 WL 7122536 (La. 1st Cir. Dec. 27,2013); St. Rec. Vol. 6 of 9, 1st Cir. Opinion, 2012 KA 1976 12/27/13.

[6]St. Rec. Vol. 2 of 19, Minute Entry, 9/11/09; Minute Entry, 11/4/09; Minute Entry, 6/7/10; Minute Entry, 4/4/11; St. Rec. Vol.4 of 19, Hearing Transcript, 4/4/11.

[7]St. Rec. Vol. 6 of 19, Hearing Transcript, pp. 1184-1185, 1207, 5/2/11; St. Rec. Vol. 2 of 19, Minute Entry, 5/2/11.

[8]St. Rec. Vol. 3 of 19, Trial; Transcript, 10/24/11; St. Rec. Vol. 4 of 19, Trial Transcript, 10/25/11; St. Rec. Vol. 5 of 19, Trial Transcript, 10/26/11; St. Rec. Vol. 5 of 19, Trial Transcript, 10/27/11; St. Rec. Vol. 1 of 19, Verdict, 10/27/2011; Trial Minutes, 10-24/11-10/27/11.

404(B), specifically, evidence that Keil had brought a complaint against Harris and two others and had been informed within days of the shooting that they would not be arrested.[9]  The Trial Court held a hearing on the matter and found the evidence admissible to show motive and that the probative value of the evidence was not outweighed by the prejudicial effect.[10]  At that time, the Trial Court also held a hearing regarding the defense's request to suppress the proposed testimony of Lieutenant Phelps that Keil had made a statement that he threw the gun out the window of his vehicle, and, after hearing testimony, ruled the evidence was admissible.[11]  Keil was ultimately found guilty of the lesser included offense of manslaughter.[12]

At a hearing held on November 14, 2011, the Trial Court denied Keil's motions for a new trial and post-verdict judgment of acquittal.[13]  After waiver of legal delays, the Trial Court sentenced Keil that day to serve thirty (30) years in prison at hard labor.[14]

On direct appeal to the Louisiana First Circuit Court of Appeal, Keil's appointed counsel asserted the following errors: (1) the evidence was insufficient to support the verdict; and (2) the State was allowed to present inadmissible evidence at trial.  Keil pro se asserted the following errors: (1) the evidence was insufficient to support the verdict; (2) the Trial Court erred in allowing

---

[9]St. Rec. Vol. 10 of 19, State's Notice of Intent to Introduce Evidence of Other Offenses Under L.C.E. Art. 404(B) and Memorandum in Support, 10/24/11.

[10]St. Rec. Vol. 4 of 19, Trial Transcript, pp. 738-757, 10/25/11; St. Rec. Vol. 1 of 19, Trial Minutes, 10/25/11.

[11]*Id.*, at pp. 758-797; St. Rec. Vol. 1 of 19, Trial Minutes, 10/25/11.

[12]St. Rec. Vol. 5 of 19, Trial Transcript, 10/27/11; St. Rec. Vol. 1 of 19, Trial Minutes, 10/27/11; Verdict 10.27.11.

[13]St. Rec. Vol. 1 of 19, Sentencing Minutes, 11/14/11; St. Rec. Vol. 2 of 19, Motion for Post-Verdict Judgement of Acquittal, 11/2/11; Pro Se Motion for Post Verdict Judgment of Acquittal Art. 821 C.Cr.P., La., 11/2/11; St. Rec. Vol.5 of 19, Sentencing Transcript, 11/14/11.

[14]St. Rec. Vol. 1 of 19, Sentencing Minutes, 11/14/11; St. Rec. Vol. 2 of 19, Commitment, 11/18/11; St. Rec. Vol. 5 of 19, Sentencing Transcript, 11/14/11.

the State to use inadmissible evidence at trial; (3) the State's witnesses gave false and perjured testimony; and (4) the responsive verdict of manslaughter was an illegal verdict.[15]  Keil filed a pro se motion to produce the audio recordings and claimed that a portion of the trial transcript was missing relative to a prosecutor's *ex parte* conversation with one of the jurors during which the Trial Court denied defense counsel's motion for a mistrial.[16]  On August 27, 2013, the First Circuit denied the motion.[17]

Keil filed a pro se supplemental brief in which he also raised ineffective assistance of counsel.[18]  On October 15, 2013, the Louisiana First Circuit issued an interim order instructing the court reporter to file a transcript of the proceeding referenced by Keil or certify that a transcript could not be prepared because she was not present when the discussion occurred or that portion of the proceeding was not recorded.[19]  On December 19, 2013, the court reporter submitted a certificate in which she stated that she had no knowledge of any *ex parte* discussions held between the prosecutor and the jury and that it was not reflected in the audio recording and if there was such a discussion, it did not occur in her presence.[20]

In the interim, the State filed a multiple offender bill to which Keil entered a plea of not guilty.[21]  The Trial Court later denied Keil's motion to reconsider the sentence on August 5, 2013.[22]

---

[15]St, Rec. Vol. 8 of 19, Appeal Brief, 2012-KA-1976, 6/20/13

[16]St. Rec. Vol. 7 of 19, Motion to Produce Audio of all Transcribed Documents of Aug. 10, 2009, May 2, 2011 and October 24-27, 2011 and November 14, 2011, 7/10/13 (filed 7/15/13).

[17]St. Rec. Vol. 8 of 19, 1st Cir. Order, 2012 KA 1976, 8/27/13.

[18]St. Rec. Vol. 8 of 19, Pro Se Supplemental Brief, 7/26/13(mailed 7/23/13).

[19]St. Rec. Vol. 6 of 19, 1st Cir. Order, 2012 KA 1976, 10/15/13.·

[20]St. Rec. Vol. 6 of 19, Reporter's Certificate, 12/19/13.

[21]St. Rec. Vol. 2 of 19, Multiple Offender Bill of Information, 11/14/11; St. Rec. Vol.1  of 19, Sentencing Minutes, 11/14/11; St. Rec. Vol. 5 of 19, Sentencing Transcript, .11/14/11

Following re-evaluation of Keil's competency, on September 13, 2013, the Trial Court adjudicated him to be a third felony offender and resentenced Keil to serve thirty (30) years in prison as a multiple offender without benefit of parole, probation, or suspension of sentence.[23]

On December 27, 2013, the Louisiana First Circuit affirmed Keil's conviction and sentence finding no merit in the first three claims and finding that Keil's failure to object to the responsive verdict meant that issue was not preserved for appeal and alternatively was without merit.[24]  The Circuit Court, on January 16, 2014, also denied the rehearing application filed by Keil's appointed counsel.[25]

Keil's appointed counsel sought review in the Louisiana Supreme Court on or about February 15, 2014.[26]  The Supreme Court denied the application on November 26, 2014, without stated reasons.[27]

In the meantime, on March 11, 2014, Keil submitted a pro se writ application to the Louisiana Supreme Court seeking review of the appeal court's ruling and raising two additional arguments that the Trial Court erred in denying the motions for new trial, post-verdict judgment of acquittal, to quash and to suppress, and that counsel was ineffective at trial.[28]  By its order issued

---

[22]St. Rec. 2 of 19, Motion to Reconsider Sentence, 11/21/11; Minute Entry, 8/5/13; St. Rec. Vol. 6 of 19, Transcript, 8/5/13.

[23]St. Rec. Vol. 6 of 19, Multiple Bill Hearing Minutes, 9/16/13; Multiple Bill Transcript, 9/13/13.

[24]*Keil*, 2013 WL 7122536, at *109; St. Rec. Vol. 6 of 19, 1st Cir. Opinion, 2012 KA 1976, 12/27/13.

[25]St. Rec. Vol. 16 of 19, 1st Cir. Order, 2012 KA 1976, 1/16/14; St. Rec. Vol. 7 of 19, Application of Curtis A. Keil, for Rehearing, 1/9/14.

[26]St. Rec. Vol. 16 of 19, La. S. Ct. Writ Application, 14 K 353, 2/18/14.

[27]*State v. Keil*, 152 So. 3d 896 (La. 2014); St. Rec. Vol. 16 of 19, La. S. Ct. Opinion, 2014-K-0353, 11/26/14.

[28]St Rec. Vol. 16 of 19, Pro Se Supplemental Brief, 14 KH 572, 3/11/14.

November 26, 2014, the Supreme Court declined to consider the application finding that it was not timely filed.[29]

Thus, Keil's conviction and sentence became final ninety (90) days after the denial of the counsel-filed writ application, on February 24, 2015, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On December 22, 2014, the Clerk of the United States District Court for the Western District of Louisiana filed Keil's first petition for federal habeas corpus relief in which he asserted the following grounds for relief:[30] (1) insufficient evidence to support the verdict; (2) the Trial Court erred in allowing false and perjured testimony from the assistant district attorney and the State's witness at the motion hearings and at trial; (3) the State used inadmissible evidence of a prior altercation at trial; (4) the Trial Court erred in denying the motion for new trial, the motion for post-verdict judgment of acquittal, and the motions to quash and suppress; (5) the trial was unfair because of jury tampering; (6) the state courts had an incomplete record on appeal; (7) counsel provided ineffective assistance at trial; (8) manslaughter was an unlawful and illegal responsive verdict; (9) the Trial Court allowed a suggestive and illegal in-court identification; and (10) he was denied a preliminary hearing. The case was transferred to this federal court after which Keil filed a supplemental memorandum in which he argued that the Trial Court erred in giving erroneous jury instructions.[31]   On June 25, 2015, the undersigned issued a Report and

---

[29]*State ex rel. Keil v. State*, 152 So. 2d 893 (La. 2014); St. Rec. Vol. 16 of 19, La. S. Ct. Order, 2014-KH-0572, 11/26/14.

[30]*Keil v. Hanson*, Case No. 2:15-cv-00422-LMA, Rec. Doc. 1.

[31]*Id.*, at Rec. Doc. 27, 7/8/15.

Recommendation recommending that his petition be dismissed for failure to exhaust state court remedies and his petition was ultimately dismissed without prejudice.[32]

On June 24, 2015, Keil submitted *pro se* to the Trial Court an application for post-conviction relief and brief in which he raised the following grounds for relief:[33] (1) insufficient evidence; (2) the State knowingly presented false testimony; (3) the Trial Court erred in admitting evidence regarding Keil's prior altercation with Harris; (4) the Trial Court erred in denying his motions to quash, to suppress, for new trial, and post judgment verdict of acquittal; (5) he was not given a proper appeal as the complete record was not filed; (6) the verdict of manslaughter was illegal; (7) ineffective assistance of trial counsel; (8) erroneous jury instructions; (9) he was wrongfully denied a preliminary exam; (10) the Trial Court erred in allowing illegal in-court identification; (11) jury tampering; (12) and newly discovered evidence.

The Trial Court denied the post-conviction application as repetitive on August 10, 2015.[34] On November 18, 2015, the Louisiana First Circuit granted in part Keil's writ application and vacated the Trial Court's ruling with respect to Keil's claims relating to the alleged *ex parte* communication/incomplete record and ineffective assistance of counsel but denied relief as to the remaining claims.[35]

On March 22, 2016, the Trial Court found that there was no factual basis for Keil's claim that the prosecutor spoke to a juror and that his ineffective assistance of counsel claims were

---

[32]*Id.*, at Rec Docs. 25, 29, 31, and 32; St. Rec. Vol. 7 of 19, Report and Recommendation, No. 15-0422, 6/25/15; *Keil v. Hanson*, Civ. Action No. 15-0422, 2015 WL 5307156 (E.D. La. Jun. 26, 2015), *report & recommendation adopted*, 2015 WL 544963 (E.D. La. Sept. 10, 2015).

[33]St. Rec. Vol. 7 of 19, Application for Post-Conviction Relief, 6/30/15.

[34]St. Rec. Vol 7 of 19, Trial Court Order, 8/10/15.

[35]St. Rec. Vol. 17 of 19, 1st Cir. Order, 2015 KW 1536, 11/18/15.

without merit.[36]  Keil did not receive a copy of the judgment until August 2, 2016, after which he

sought rehearing.[37]  The Trial Court denied rehearing on September 8, 2016.[38]

     Keil filed a writ application with the Louisiana First Circuit with was denied on December

12, 2016.[39]  Keil filed an application for supervisory writs with the Louisiana Supreme Court on

December 23, 2016.[40]  On August 3, 2018, the Louisiana Supreme Court denied writs finding Scott

failed to show he received ineffective assistance of counsel under the standard of *Strickland v.*

*Washington*, 466 U.S. 668 (1984), and, as to his remaining claims, he failed to satisfy his post-

conviction burden of proof or they were repetitive, although it did not specify which claims were

repetitive.[41]

## II.    Federal Habeas Petition

     On October 9, 2018, the clerk of this Court filed Keil's petition for federal habeas corpus

relief in which he asserts the following grounds for relief:[42] (1) insufficient evidence; (2) the State

knowingly presented false testimony; (3) the Trial Court erred in admitting evidence regarding

Keil's prior altercation with Harris; (4) the Trial Court erred in denying his motions to quash, to

suppress, for new trial and for post-judgment verdict of acquittal; (5) he was denied a proper appeal

---

[36]St. Rec. Vol. 7 of 19, Judgment on Post-Conviction with Incorporated Reasons, 3/22/16.

[37]St. Rec. Vol. 7 of 19, Clerk of Court Letter, 7/26/16; Application for Rehearing, 8/8/16.

[38]St. Rec. Vol. 7 of 19, Trial Court Order, 9/8/16.

[39]*State v. Keil*, 2016 WL 1289, 2016 WL 7217281 (La. 1st Cir. Dec. 12, 2016); St. Rec. Vol. 18 of 19, 1st Cir. Order, 2016 KW 1289, 12/12/16; 1st Cir. Writ Application, 2016 KW 1289, 9/15/16.

[40]St. Rec. Vol. 19 of 19, La. S. Ct. Writ Application, 17 KH 312, 2/16/17 (dated 12/23/16).

[41]*State ex rel. Keil v. State*, 249 So. 3d 827 (La. 2018) (per curiam); St. Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 8/3/18.

[42]Rec. Doc. No. 1, p. 5; Rec Doc. No. 1-2, p. 17.  Keil did not file a brief in support of his petition; rather, he refers to his brief in support of post-conviction relief.  Rec. Doc. No. 1-3, p. 10-29.

as the complete record was not filed; (6) the verdict of manslaughter was illegal; (7) ineffective assistance of trial counsel; (8) erroneous jury instructions; (9) he was wrongfully denied a preliminary exam; (10) the Trial Court erred in allowing an illegal-in court identification; (11) jury tampering; and (12) newly discovered evidence.

The State filed a response in opposition to the petition asserting that Keil timely filed his federal petition and that his claims are exhausted.[43]  The State asserts that some of Keil's claims are not cognizable on federal habeas review and the remaining claims can be dismissed as meritless.  Keil filed a reply.[44]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[45] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on September 12, 2018.[46]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court

---

[43]Rec. Doc. No. 13.

[44]Rec. Doc. No. 14.

[45]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[46]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Keil did not date his petition, however, it was sent certified mail on September 12, 2018.

remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes Keil timely filed his federal petition and that he exhausted his claims. The State asserts that Keil's claims can be dismissed as meritless or not cognizable on federal habeas review.[47]

## IV.    **Standards for a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.

---

[47]Rec. Doc. No. 13.

*Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford*

*v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Wrongful Denial of Preliminary Exam (Claim No. 9)[48]

Keil claims he was wrongfully denied a preliminary examination in violation of his right to due process. He claims his original counsel requested a preliminary examination on October 23, 2008, before he was indicted on December 15, 2008. A second preliminary examination was requested on January 7, 2009.

Louisiana law provides that either the state or the defense can move for a preliminary examination under La. Code Crim. P. art. 292. The primary purpose of the preliminary examination is to assure that probable cause existed to hold the defendant in custody pending trial exists. *State v. Holmes*, 388 So.2d 722 (La. 1980); *State v. Mayberry*, 457 So.2d 880, 881 (La. App. 3rd Cir.), *writ denied*, 462 So.2d 191 (La. 1984). Under state law, while there is no

---

[48]For ease of analysis, this Report and Recommendation addresses Keil's claims in a different order than they were listed in his federal application.

requirement that a preliminary hearing be held, once one is requested, the court must provide the hearing. *Accord State v. Gomez*, 940 So.2d 663 (La. 2006).

Louisiana courts have held that where the evidence does not establish probable cause at a preliminary examination, the defendant will be released from custody or bail; however, the state may still proceed with criminal charges against the individual. *State v. Lewis*, 28 So.3d 548, 555 (La. App. 4th Cir. 2009); *Mayberry*, 457 So.2d at 882. When no preliminary examination occurs, "the issue is moot after conviction, at least in the absence of prejudice." *State v. Washington*, 363 So.2d 509, 510 (La. 1978).

In this case, Keil's original defense counsel filed a motion for preliminary hearing on October 31, 2008.[49] The record reflects that the motion was "passed."[50] Keil was charged by a bill of indictment December 15, 2008, and arraigned on January 5, 2009.[51] Defense counsel apparently filed another motion for preliminary examination on January 7, 2009, which was denied on May 2, 2011.[52] Keil filed a third one December 30, 2010, which was also denied.[53]

Violation of state law does not give rise to a federal claim under habeas review. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In addition, the Fifth Circuit has recognized that there is no federal constitutional right to a preliminary hearing. *Harris v. Estelle*, 487 F.2d 1293, 1296 (5th Cir.1973); *Siwakowski v. Beto*,

---

[49] St. Rec. Vol. 9 of 19, Motion for Preliminary Examination, 10/31/08.

[50] St. Rec. Vol. 6 of 19, Hearing Transcript, p. 1201-1203, 5/2/11; St. Rec. Vol. 1 of 19. Minute Entry, 5/2/11.

[51] St. Rec. Vol. 1 of 19, Bill of Indictment, 12/15/08; Minute Entry, 1/5/09.

[52] St. Rec. Vol. 15 of 19, Hearing Transcript, pp. 2983-2988, 11/14/11.

[53] St. Rec. Vol. 1 of 19, Motion for Preliminary Exam, 12/30/10; St. Rec. Vol. 6 of 19, Hearing Transcript, 5/2/11; St. Rec. Vol. 2 of 19, Minute Entry, 5/2/11..

455 F.2d 915, 916 (5th Cir.1972) (per curiam) (holding referral of case to grand jury without an examining trial was constitutionally permissible); *Weary v. Cain*, No. 10–1793, 2011 WL 7416509, at *11 (E.D. La. Apr.21, 2011), *report & recommendation adopted*, 2012 WL 601862 (E.D. La. Feb.22, 2012).  Instead, grand jury indictment constitutes a final determination of the existence of probable cause in a criminal case.  *See Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975) (indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry"); *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 493 (5th Cir.1998) ("In returning ... an indictment a grand jury indicates that it has found probable cause to believe that a criminal offense has occurred.").  Thus, the Trial Court's failure to honor Keil's request for a preliminary hearing did not violate federal law.

The state courts' rejection of Keil's claim was not contrary to and does not involve an unreasonable application of clearly established Supreme Court law.  Keil is not entitled to relief as to this claim.

## VI. <u>Sufficiency of the Evidence, Illegal Verdict, Failure to Grant a New Trial Or Post-Judgment Verdict of Acquittal (Claim Nos. 1, 4(A) and (B) and 6</u>

Keil contends that the evidence was insufficient to prove his identity to convict him of second degree murder or manslaughter.  In making this claim, Keil argues that there was a lack of physical or scientific evidence and the eyewitness testimony was not credible.  He further claims that the verdict is illegal because it did not conform to the evidence at trial.  He also claims the Trial Court erred in failing to grant his motion for new trial and post-judgment verdict of acquittal.

The State argues that the evidence presented at trial was sufficient to establish each element of second degree murder, that the verdict of manslaughter was a permissible verdict, and that denial of relief by the state courts' was proper under federal law.

Keil raised the sufficiency of the evidence on direct appeal to the Louisiana First Circuit. Relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state law, the Court resolved that, while there was no physical evidence tying Keil to the scene, the eyewitness testimony was unequivocal. The Court noted there was evidence of possible motive based on Sergeant McDaniel's testimony that, in the days before the shooting, Keil was very upset when McDaniel informed Keil that he would not be arresting Harris or two other men in connection with a complaint Keil made against them. The Court also noted Lieutenant Phelps's testimony that Keil stated that he had thrown the gun from the car window after he drove away from the scene of the shooting.

The Court concluded the credibility of the witnesses was exclusively a jury decision and that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to establish that the defendant was the perpetrator of the offense. It further concluded that there was sufficient evidence from which the jury could have reasonably concluded that Keil was guilty of the indicted offense of second degree murder, notwithstanding the jury's legislatively authorized responsive verdict of manslaughter, which may have been a compromise verdict. This was the last reasoned opinion on the issue because the Louisiana Supreme Court denied relief without stated reasons. *See  See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must

therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of, Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent Keil relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."

*State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So. 2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Keil was charged with second degree murder and convicted of the lesser offense of manslaughter. In Louisiana, manslaughter is defined as a homicide which otherwise would be first or second degree murder, with specific intent to kill or commit great bodily harm, "but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. Rev. Stat. § 14:31(A)(1); *State v. Logan*, 34 So.3d 528 (La. App. 2d Cir. 2010); *State v. Quiambao*, 833 So.2d 1103 (La. App. 2d Cir. 2002).

Under La. Code Crim. P. art. 814(A)(3), manslaughter is a responsive verdict to the charge of second degree murder. The record reveals that Keil did not object to the inclusion of manslaughter as a possible verdict.[54] Thus, Keil's conviction may be upheld, regardless whether the manslaughter verdict is supported by the evidence, if the State established the elements of second degree murder. *See State ex rel. Elaire v. Blackburn*, 424 So. 2d 246, 251–52 (La. 1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed. 2d 1318 (1983) (When a defendant does not object to a trial court's instruction on a legislatively authorized responsive verdict on the basis that the evidence does not support that responsive verdict, the conviction will not be reversed regardless of whether that verdict is supported by the evidence, if the evidence is sufficient to sustain a conviction on the charged offense).

Louisiana defines second degree murder as "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir.

---

[54]St. Rec. Vol. 5 of 19, Trial Transcript, pp. 1120-1125, 10/27/11.

1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).  Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or a gun.  *State v. Collins*, 43 So.3d 244, 251 (La. App. 1st Cir. 2010) (citing *State v. Brunet*, 674 So.2d 344, 349 (La. 1996)).

In reaching its decision, the First Circuit found that because Keil only challenged his identification as the perpetrator it did not need to determine whether the State met its burden of proving the elements of manslaughter.[55]  It determined that given the eyewitness testimony, the evidence of motive, and the evidence that Keil admitted to throwing the gun out the window of his vehicle after the shooting, there was sufficient evidence to conclude that Keil was the perpetrator of the offense and the jury's verdict of manslaughter was not irrational.[56]

With regard to Keil's claim that the verdict was unlawful because it did not conform to the evidence, it found that there was sufficient evidence to convict Keil of second degree murder and the verdict of manslaughter may have been a compromise verdict.[57]  It found that the claim was without merit because it was a legislatively approved verdict and there was no contemporaneous objection.[58]

Keil challenges the sufficiency of the evidence to prove his identification as a perpetrator of the crime.  Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as a perpetrator.  *State v. Draughn*, 950 So.2d 583, 593 (La.), *cert. denied*, 552 U.S. 1012 (2007); *State v. Thomas*, 192 So.3d 291, 303 (La. App. 5th Cir. 2016); *State v. Ingram*, 888 So.2d 923, 926 (La. App. 5th Cir. 2004).  Where the key

---

[55]*Keil*, 2013 WL 7122536, at *1-2; St. Rec. Vol. 6 of 19, 1st. Cor. Opinion, 2012 KA 1976, at *4 12/27/13.

[56]*Id*., at pp. *2-3; St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at p. 4 12/27/13.

[57]*Id*., at p. *7;St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at p. 12-13 12/27/13.

[58]*Id*., at pp. *7-8;St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at p. 4 12/27/13.

issue is identification, the State is required to negate any reasonable probability of misidentification. *Id.* However, a positive identification by only one witness is sufficient to support a conviction. Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction. *See United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983); *State v. Neal*, 796 So.2d 649, 658 (La. 2001); *State v. Williams*, 3 So.3d 526, 529 (La. App. 5th Cir. 2008); *see also Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), *report & recommendation adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012). Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination. *State v. Thomas*, 13 So.3d 603, 607 (La. App. 5th Cir. 2008).

A review of the relevant evidence presented at trial was more than sufficient to establish, and Keil does not contest, that Harris died after being shot four times. To prove Keil's identity as the perpetrator, the State introduced evidence from four eyewitnesses. Katrina Hall testified that she and her parents were outside when they heard Harris and Keil arguing out by the road.[59] As she and her mother walked towards the street, she heard five shots.[60] She saw Keil jump into a white vehicle car and before he drove off, she heard him say, "I want him to run from that."[61] Katrina Hall explained that she was familiar with Keil and that she recognized him on the day of the shooting.[62] Within an hour of the shooting, she went to the police station and gave a written statement.[63] Katrina Hall

---

[59]St. Rec. Vol. 4 of 19, Trial Transcript, p. 850, 10/15/11.

[60]*Id.*, at pp. 850-852.

[61]*Id.*, at pp. 850, 854-855, 860, 859.

[62]*Id.*, at p. 851.

[63]*Id.*, at p. 857-859.

identified Keil in court and testified that there was no doubt in her mind that he was the person she saw shoot Harris.[64]

Emory Moses testified he was driving down the street when he saw Keil start running towards Harris who was standing amongst a group of five other people.[65]  Moses testified that he saw Keil shoot the victim as he tried to jump a ditch.[66]  Moses recalled that Keil drove off in a white Lincoln Continental.[67]  Moses testified that he knew Keil but that they were not friends.[68]  Moses talked to the police immediately after the shooting and went to the station to give a written statement.[69]  Moses made an in-court identification of Keil as the person he saw shoot Harris.[70]

Kenneth Hall, Sr., testified he was at his daughter's house when he heard a commotion outside.[71]  When he went outside, he saw Keil and Harris arguing.[72]  He heard a shot and saw Keil shoot the victim.[73]  Keil then got into his car and said, "Let him run from that."[74]  He recalled that he gave a statement to police when they arrived on the scene and several weeks later he gave a written

---

[64]*Id.*, at p. 851.

[65]*Id.*, at pp. 860, 863-865

[66]*Id.*, at pp. 860-61, 865.

[67]*Id.*, at pp. 861, 864-65.

[68]*Id.*, at p. 861.

[69]*Id.*, at p.862-863.

[70]*Id.*, at p. 861.

[71]*Id.*, at p. 867.

[72]*Id.*

[73]*Id.*.

[74]*Id.*, at pp. 867-68.

statement at the police station.[75]  Kenneth Hall, Sr. made an in-court identification of Keil and testified that he was certain he was the shooter.[76]

Gregory Brown testified that he, Harris, Harris's father and a few other people were "hanging out" on Ann Street when Keil drove up.[77]  According to Brown, Keil got out of the car and asked Harris if he was going to give him a fair fight and Harris replied he did not want to fight.[78]  Brown recalled that Keil then pulled out a gun and everyone scattered.[79]  Brown hid behind a car and heard a shot.[80] He looked out from behind the car and saw Harris on the ground and then saw Keil shoot him two more times.[81]  Brown saw Keil drive away and make a left on Church Street.[82]  Brown testified that he did not hear Keil say anything.[83]  Brown testified that he spoke to police when they arrived at the scene and then went to the police station and gave a written statement.[84]  Brown identified Keil in court.[85]

---

[75] *Id.*, at pp. 872-878.

[76] *Id.*, at p. 867.

[77] *Id.*, at pp. 880

[78] *Id.*, at pp. 880-882.

[79] *Id.*, at pp 880, 888.

[80] *Id.*.

[81] *Id.*

[82] *Id.*, at pp. 882-884.

[83] *Id.*, at p. 886.

[84] *Id.*, at pp. 881, 883, 885.

[85] *Id.*, at p. 881.

Sergeant McDaniel of the Bogalusa Police Department testified that Keil had made a complaint against Harris on August 28, 2008.[86]  After McDaniel conducted an investigation, he sent a report to the Bogalusa City Attorney who declined to prosecute due to a lack of witness statements.[87]  At some point after September 29, 2008, but before the homicide, McDaniel met with Keil to tell him that Harris would not be arrested.[88]  McDaniel recalled that that Keil was extremely upset when he left the meeting.[89]

Lieutenant Phelps testified that Keil was given his *Miranda* rights but did not request an attorney and, in response to questions asked by Phelps regarding the location of the gun, Keil told him that he threw it out the window of his vehicle.[90]  Phelps testified that he and Captain Culpepper and another officer retraced the most logical route between the scene of the shooting and Keil's mother's house but were unable to find the weapon.[91]

Based on the verdict, the jury obviously found the testimony and statements, including those identifying Keil as the shooter, to be credible.  Keil's argument in this regard is essentially that the jury should have not have believed the testimony of the eyewitnesses.  In short, the trial record reflects a classic credibility contest over witness testimony, including what inferences should be drawn from and the weight to be assigned to evidence.  These are functions the law assigns to the jury, which resolved the arguments asserted by Keil against him.  *Jackson* limits this Court's review to the evidence before

---

[86]*Id.*, at p. 902.

[87]*Id.*, at pp. 902-903.

[88]*Id.*, at pp. 902-905.

[89]*Id.*, at pp. 903-04, 906.

[90]St. Rec. Vol. 5 of 19, Trial Transcript, at pp. 1061-62, 10/26/11.

[91]*Id.*, at p. 1063.

the trier of fact and does not allow the Court to reassess the weight and credibility of the evidence. *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder). Specifically, the determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1995) (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). The jury's resolve was reasonable and supported by the evidence and testimony.

For these reasons, Keil has failed to establish that the verdict was contrary to the law and evidence or that there was insufficient evidence under the *Jackson* standard to support the verdict against him. The state courts' denial of relief on these issues, as well as the denial of the post-trial motions, was not contrary to, or an unreasonable application of, Supreme Court law. Keil is not entitled to relief on these claims.

## VII.    Dnderline{False Testimony (Claim No. 2)}

Keil next contends that the prosecution knowingly presented the false testimony of Sergeant Culpepper and Lieutenant Phelps. Keil relies on the contradictory testimony of Officer Smith and Culpepper's report regarding the investigation of the homicide.

Keil raised this claim on direct appeal. In the last reasoned decision, the Louisiana First Circuit found that conflicting testimony of witnesses was a matter for the jury to decide and did not provide a basis for relief.[92]

---

[92]*Keil*, 2013 WL 7122536, at *6-7;St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at p. 11-12, 12/27/13.. Keil raised the issue again on collateral review and it was found to be repetitive because it had already been asserted and adjudicated on direct appeal. That procedural ruling is of no moment in this federal proceeding.

A state denies a defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 766, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). In order to obtain relief, the defendant must show that: (1) the testimony was actually false, (2) the State knew the testimony was false, and (3) the testimony was material. *Duncan v. Cockrell*, 70 F. App'x 741, 744-45 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. *Duncan*, 70 F. App'x at 744 (citing *Nobles*, 127 F.3d at 415).

Here, it is clear that Keil has not met his burden of proving that the testimony was actually false and that the prosecution knew it to be false and allowed it to go uncorrected. Lieutenant Phelps testified that he was present when Officer Smith read Keil his rights and Keil did not ask for an attorney.[93] In response to questions to Keil about the location of the gun, Keil told Phelps that he threw the gun out the window of his vehicle, although he claimed he did not recall the route he took to get to his parents' home.[94] Thereafter, Phelps, Culpepper and another officer searched for the weapon along the most logical route from the scene of the crime to City Limits Road but were unable to locate it.[95] Phelps testified that he first told the prosecutor about Keil's statement a couple of months before trial.[96]

---

Because the claim had been previously denied on the merits on direct review, this Court simply "looks through" that subsequent procedural ruling and evaluates the validity of the prior direct-review ruling. *See Ylst*, 501 U.S. at 804 n.3.

[93] St. Rec. Vol. 5 of 19, Trial Transcript, p. 1019, 10/26/11; Trial Transcript, pp. 1061-62, 10/27/11.

[94] *Id.*, at pp. 1020-1021; Trial Transcript, p. 1062, 10/27/11.

[95] *Id.*, at p. 1021; Trial Transcript, p. 1063, 10/27/11.

[96] *Id.*, at p. 1027.

Captain Culpepper testified that when he arrived at the scene of Keil's arrest, Smith had Keil in handcuffs.[97]  He testified that he and Lieutenant Phelps searched for the weapon using a metal detector but did not find the gun.[98]  Culpepper admitted that he did not include in his written report that they searched for the gun.[99]  He also admitted that his report did not mention that Keil had made any incriminating statements.[100]  He attributed it to an omission and his assumption that Phelps would include it in his report.[101]

Officer Smith testified on the behalf of the defense that he located Keil at his mother's house and read him his *Miranda* rights after which Keil asked for an attorney.[102]  He did not recall Phelps ever being at the scene and testified that, as far as he knew, no other officer talked to Keil.[103]  Smith testified that he did not write a report but that he reviewed Culpepper's report and it accurately reflected that Smith read Keil his right and that he requested an attorney and no further questioning took place.[104]  Smith claimed that Phelps was lying about being present when Keil was Mirandized and about questioning Keil about the whereabouts of the gun.[105]

Perjury is the offering of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United*

---

[97]*Id*., at p. 930.

[98]*Id*., at pp. 938-940.

[99]*Id.*, at pp. 962, 965.

[100]*Id*., at p. 975.

[101]*Id*., at pp. 962, 965.

[102]St. Rec. Vol. 5 of 19, Trial Transcript, pp. 1041-1042, 10/27/11.

[103]*Id*., at pp. 1042-1044.

[104]*Id*., at pp. 1043-1044, 1047.
[105]*Id*., at p. 1050

*States v. Dunnigan*, 507 U.S. 87, 94 (1993).  The fact that the testimony of Culpepper and Phelps was inconsistent with Smith's testimony and other evidence does not establish that it was false or that the prosecution knew or believed that testimony to be false.  *See Kutzner v. Cockr*ell, 303 F.3d 333, 337 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding that conflicting testimony does not prove perjury but instead establishes a credibility question for the jury).  The mere existence of a conflict in testimony and evidence does not make it false or perjured.  *See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004), *cert. denied*, 544 U.S. 978 (2005) ("Wall has not established that McDowell's testimony was actually false.  He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.' ").  The evidence in this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's function to resolve.

Keil has failed to establish that the State violated his constitutional rights through the presentation of any false testimony from Culpepper or Phelps.  The state courts' denial of relief of this claim was not contrary to, or an unreasonable application of federal law.  Thus, Keil is not entitled to relief on this claim.

**VIII.  <u>Admission of Prior Altercation Evidence (Claim No. 3)</u>**

Keil claims that the Trial Court erred in allowing the State to introduce evidence of his prior altercation with Harris.

The day before trial, the State filed a notice of intent to introduce evidence of other offenses under La. Code Evid. art 404(B)(1) relating to Sergeant McDaniel's proposed testimony that Keil sought to have the victim arrested for an incident that occurred at Harris's home and, that in the days

prior to the shooting, McDaniel told Keil that Harris would not be arrested.[106]  The State intended to introduce the testimony to show motive to shoot Harris.  The defense argued that the notice was untimely under La. Code Evid. art 404(B)(1) because it was not given in a reasonable time in advance of trial and that the probative value of the evidence was outweighed by the prejudicial effect.[107]  The Trial Court found that the defense was aware of the prior altercation well in advance of trial and that the proposed testimony was not true 404(b) evidence subject to reasonable notice.[108]  The Trial Court concluded that the evidence was relevant to show the history between Keil and the victim, the probative value of the proposed testimony outweighed any prejudicial effect, and allowed Sergeant McDaniel to testify.[109]

In the last reasoned opinion, in addressing the issue on direct appeal, the Louisiana First Circuit found that that the evidence was not evidence of other crimes, wrongs or acts committed by Keil as Harris was the alleged wrongful actor in the prior altercation and Keil was the victim.[110]  It found that the testimony was relevant to prove Keil's motive in committing the offense.[111]  It therefore concluded that the Trial Court did not abuse its discretion in introducing McDaniel's testimony.[112]  Keil's efforts to reassert these claims on post-conviction review were barred as repetitive at each level of the state courts.  *Ylst*, 501 U.S. at 802.

---

[106]St. Rec. Vol. 1 of 19, State's Notice of Intent to Introduce Evidence of Other Offenses Under L.C.E. Art. 404(B) and Memorandum of Law, 10/24/11.

[107]St. Rec. Vol. 4 of 19, Trial Transcript, pp. 740-757, 10/25/11.

[108]*Id*., at p. 757.

[109]*Id.*

[110]*Keil*, 2013 WL 7122536, at *6;St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at p. 10, 12/27/13.
[111]*Id.;*St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at pp. 10-11, 12/27/13.

[112]*Id.;*St. Rec. Vol. 6 of 19, 1st. Cir. Opinion, 2012 KA 1976, at pp. 10-11, 12/27/13.

To the extent Keil argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. *See Swarthout*, 562 U.S. at 219.  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee.  *Burgett v. Texas*, 389 U.S. 109 (1967).

Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.).  Federal habeas review on such matters is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.  *Peters*, 942 F.2d at 940.  The Due Process Clause provides a mechanism for relief when evidence is wrongly admitted in a state court criminal proceeding, but only if that evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005).  The evidence must have had a substantial, injurious effect or influence in determining the jury's verdict such that it rendered the trial fundamentally unfair.  *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).  Admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it "played a

crucial, critical, and highly significant role in the trial." *Gonzales*, 643 F.3d at 430 (quotation omitted).

Under these standards, to establish a fundamentally unfair trial, a petitioner must show a reasonable probability that the verdict might have been different had the trial been properly conducted. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985).  A habeas petitioner must show that "the trial court's error had a 'substantial and injurious effect or influence in determining the jury's verdict.' " *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

This issue presents a mixed question of law and fact.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (admissibility of evidence under the Due Process Clause is a mixed question of law and fact).  Thus, the court must determine whether the denial of relief by the state courts was contrary to or an unreasonable application of federal law.  Under these rigorous standards, Keil has failed to meet his burden regarding the trial court's admission of the evidence of his prior altercation with Harris.

The Court's review of the record confirms the relevance of the evidence of Keil's complaint against Harris and that the probative value of the evidence outweighed the prejudicial effect.  Keil's defense was that he was not the person who shot and killed Harris.  The evidence relating to Keil's complaint against Harris and McDaniel's meeting with Keil to advise that Harris would not be arrested was offered to establish Keil's bad character but rather to show proof of motive.  The prosecutor was careful in her questioning such that there was limited testimony regarding the incident that caused Keil to file complaints against Harris and two others, and the evidence did not demonstrate that Keil was the wrongful actor; rather, he claimed to be the victim.

There is no indication in the record that the testimony and evidence misled the jury into an improper verdict.  Because he has not demonstrated error in the admission of the evidence, he "has no basis for any alleged due process violation" or denial of a fundamentally fair trial.  *Robinson v. Whitley*, 2 F.3d 562 567 (5th Cir. 1993); *see also Neal v. Cain*, 141 F.3d at 214.  Even if he had shown an error, given the eyewitness testimony that established Keil's guilt, he has failed to demonstrate that the evidence relating to the prior incident "played a crucial, critical, and highly significant role in the trial."  *Gonzales*, 643 F.3d at 430 (quotation omitted).  The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Keil's claim is without merit.

## IX.    Illegal In-Court Identification (Claim No. 10)

Keil claims that the Trial Court erred in allowing "impermissibly suggestive" in-court identifications of him by State witnesses.  He claims none of the witnesses initially identified him at the time of the incident, and the witnesses were only able to do so later due to his exposure in the news.

The Trial Court denied relief without explanation when Keil raised the issue in his application for post-conviction relief.[113]  In the last reasoned opinion, the Louisiana Supreme Court found Keil failed to meet his post-conviction burden of proof.[114]

"The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures."  *United States v. Guidry*, 406 F.3d 314, 319 (5th Cir. 2005).  The Fifth Circuit instructs that the admissibility of identification evidence is governed by a two-

---

[113]St. Rec. Vol. 7 of 19, Trial Court Order, 8/10/15.

[114]*State ex rel. Keil*, 249 So. 3d at 827; St. Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 8/3/18.

step test: "First, we determine whether the identification procedure was impermissively suggestive, and second, we ask whether the procedure posed a 'very substantial likelihood of irreparable misidentification.' " *Id.* (quoting *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997).

In this case, there was no photographic lineup to ascertain the identification of the perpetrator. There is however, no constitutional right to a pretrial lineup, and the in-court identifications were not rendered unconstitutional simply because no such pretrial procedures were utilized. *United States v. Brown*, 699 F.2d 585, 593–94 (2nd Cir.1983); *United States v. McGhee*, 488 F.2d 781, 786 (5th Cir.1974); *Hankins v. Smith*, No. 03 Civ. 5404, 2008 WL 4601000, at *3 (S.D.N.Y. Oct.15, 2008).

Nonetheless, an in-court identification of the perpetrator of a crime is obviously suggestive. *Rogers*, 126 F.3d at 658 (citations omitted). To prevail on a claim that the witnesses' identification testimony derived from a suggestive identification procedure, a petitioner must show that the identification procedure was "so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) ); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

The Court must consider five factors to determine the likelihood of misidentification: 1) the witness's opportunity to view the perpetrator at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description; 4) the level of certainty demonstrated when making the identification; and 5) the time between the crime and the identification. *Neil*, 409 U.S. at 199-200.

This analysis involves a mixed question of law and fact. *Livingston*, 107 F.3d at 309. This Court must therefore determine whether the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006); *Walker v. Vannoy*, Civ. Action No. 15-6809, 2016 WL 7485675, at *11 (E.D. La. Sept. 9, 2016), *report and recommendation adopted*, 2016 WL 7476334 (E.D. La. Dec. 29, 2016). Keil has not made the required showing.

Each of the four witnesses who identified Keil at trial knew him *prior* to the incident and testified that they had no doubt that Keil was the shooter.[115] Further, each of them witnessed the shooting and were interviewed immediately thereafter at which time they all identified Keil as the perpetrator of the crime.[116] A witness's prior acquaintance with the accused renders negligible the risk of misidentification. *See United States v. Hefferon*, 314 F.3d 211, 219 (5th Cir. 2002); *Hetzel v. Cowan*, 518 F.2d 851 (6th Cir.1975); *United States v. Beckham*, 505 F.2d 1316, 1319 (5th Cir.1975); *Weber v. Cain*, Civ. Action No. 06–1055, 2008 WL 3876399, at *21 (E.D. La. Aug. 20, 2008). Where, as here, an identification is based on prior acquaintance, the issue is less one of *reliability* than of *credibility*, and doubts as to credibility, are properly left to the jury. *United States v. Lew*is, 248 F.3d 1142, at *3 (5th Cir. 2001) (per curiam) (citing *United States v. Fernandez-Roque*, 703 F.2d 808, 814 (5th Cir.1983)).

In light of the circumstances and the number of eyewitnesses, there is no likelihood of misidentification in the case. Keil has therefore failed to demonstrate that the state courts' decision

---

[115]St. Rec. Vol. 4 of 19, Trial Transcript, pp. 850-851 (Katrina Hall), 861 (Emory Moses), 867 (Kenneth Hall, Sr.), 881 (Gregory Brown), 10/25/11; St. Rec. Vol. 5 of 19, Trial Transcript, pp. 973, 986, 10/66/11 (Culpepper testified the witnesses on scene knew Keil and "actually knew [Keil] by face and name.")

[116] St. Rec. Vol. 4 of 19, Trial Transcript, pp. 858-859 (Katrina Hall), 862 (Emory Moses), 881-883 (Gregory Brown), 10/25/11.

rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Keil is not entitled to relief as to this claim.

## X.    Denial of Motions to Quash and to Suppress (Claim Nos. 4(C) and (D))

Keil next contends that the Trial Court erred in denying his motions to quash and to suppress. The State contends that to the extent that the motions rely on state law, Keil fails to state a claim for federal habeas relief. It alternatively contends that the claims are without merit.

### A.    Motion to Quash

Keil filed a motions to quash in May and June 2009 based on state law and alleged false evidence.[117] Those motions were denied at a hearing on May 2, 2011.[118] On June 10, 2011, Keil filed a third pro se motion to quash pursuant to La. Code Crim. P. arts. 532(5), 537 and 485, alleging a lack of evidence and false evidence and the denial of a preliminary exam and speedy trial.[119] The Trial Court denied the motion at a hearing on July 25, 2011.[120]

To the extent Keil requests that this Court review the propriety of denial of the motion to quash under state law, "federal habeas corpus relief does not lie for errors of state law." *Swarthout*, 536 U.S. at 219 (quoting *Estelle*, 502 U.S. at 67) (internal quotations omitted). This court does not sit as a "super" state supreme court. *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.

---

[117]St. Rec. Vol. 6 of 19, Motion to Quash Pursuant to Art. 484 & 485 Effect of Inconsistent or Limiting Allegations of Bill of Particulars, 5/6/09; Motion to Quash Pursuant to Art. 485, Effect of Inconsistent or Limiting Allegations of Bill of Particulars & Violations of the 14th and 5th Amendment & 8th Concerning False Evidence & Cruel and Unusual Punishment, 6/19/09.

[118]St. Rec. Vol. 6 of 19, Hearing Transcript, 5/2/11.

[119]St. Rec. Vol. 1 of 19, Motion to Quash, 6/10/11.

[120]St. Rec. Vol. 1 of 19, Minute Entry, 7/25/11

1991) (citing *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir.), *cert. denied*, 400 U.S. 918 (1970)).  This court will only review Keil's claim if he can establish that the state courts' denial of his motions to quash constituted a violation of a constitutional right.  Construing his arguments very broadly, Keil asserts violation of his right to a speedy trial in this regard.

The Sixth Amendment guarantees every person accused of crime the right to a speedy trial. *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011).  Whether a defendant has been deprived of his right to a speedy trial is a mixed question of law and fact.  *Id.* at 204; *Divers v. Cain,* 698 F.3d 211, 216 (5th Cir. 2012).  Therefore, to obtain federal habeas relief, petitioner must show that the state courts' decision denying his claim was contrary to or an unreasonable application of Supreme Court precedent.  The Court must consider that, "due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, our 'always-substantial deference is at an apex.' " *Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05).

In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court recognized that "[i]t is ... impossible to determine with precision when" a specific trial delay crosses the line and becomes unconstitutionally long.  *Barker*, 407 U.S. at 521; *Laws v. Stephens*, 536 F. App'x 409, 412 (5th Cir. 2013).  The Supreme Court declared that " '[t]he right of a speedy trial is necessarily relative,' " and required the courts to apply "a functional analysis of the right in the particular context of the case [.]"  *Id.* at 522 (citation omitted).  Courts must consider and balance the following factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530; *Amos*, 646 F.3d at 205 (citing *Goodman v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008)); *Doggett v. United States*, 505 U.S. 647, 651 (1992).

Under La. Code Crim. P. art. 578(A)(2), the State had two years from commencement of the prosecution to try Keil. Calculating time under the first *Barker* factor begins with "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (per curiam). The record reflects that Keil was indicted by a grand jury on December 15, 2008, and the State ordinarily would have had two years from that date to try Keil. He was not tried until nearly three years later on October 24-27, 2011. Thus, Keil has made a threshold showing of prejudicial delay sufficient to trigger a full *Barker* analysis. *See Amos*, 646 F.3d at 206.

Next, the reason for such delay is considered. *Id*. at 207. A court gives different weight to different reasons, and "delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state." *Id*. In this case, Keil's underwent multiple psychiatric evaluations and was ultimately found to be competent on April 4, 2011.[121] His August 2011 trial date was continued at the defense's request when his Assistant Public Defender resigned from the office.[122] His trial occurred within six months of him being found to be competent. *United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir.1994) (weighing delay occasioned by defense motions for competency examinations and requests for continuances against the defendant); *McCoy v. Cabana*, 794 F.2d 177, 180 at fn. 1 (5th Cir.1986) (refusing to weigh the time the defendant's competency was being evaluated pursuant to a defense motion against the state); Accordingly, the delay to try Keil within the time period specified by statute was delayed by no fault of the State.

---

[121]St. Rec. Vol. 9 of 19, Minute Entry, 4/4/11.

[122]St. Rec. Vol. 2 of 19, Minute Entry, 8/1/11; Minute Entry, 9/7/11.

The third *Barker* factor examines whether the defendant "diligently asserted his speedy trial right." *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007). Keil filed a pro se motion for speedy trial in May 2009.[123] Further, as indicated, he filed multiple motions to quash the indictment which constitute an assertion of the right to a speedy trial. *Divers*, 698 F.3d at 219 (citation omitted). This factor therefore weighs in favor of Keil.

Finally, the fourth Barker factor examines the prejudice to the petitioner because of the delay. *Barker*, 407 U.S. at 530. Typically, the petitioner carries the burden to demonstrate actual prejudice; however, after reviewing the first three factors, a court must decide whether the petitioner still bears that burden or whether prejudice is presumed. *See Amos*, 646 F.3d at 208. Here, Keil has not demonstrated that the above three factors warrant presumed prejudice. While the delay was extended, a valid reason existed for the delay and while Keil, filed pro se motions requesting a speedy trial, his counsel required more time to prepare. Accordingly, in order for Keil to prevail on his speedy trial claim, he must establish actual prejudice and demonstrate that the prejudice adequately exceeds the other factors. *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007); *see also Amos*, 646 F.3d at 208 n.42 (finding no presumption of prejudice even when two of the three *Barker* factors weighed in favor of petitioner).

Under *Barker*, in assessing prejudice, courts should consider three interests of the petitioner: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibility that the defense will be impaired.

---

[123]St. Rec. Vol. 9 of 19,Motionfor Speedy Trial, 5/15/09.

*Barker*, 407 U.S. at 532.  Of those, the most significant prejudice is the petitioner's ability to prepare his case without limitation.  *Frye*, 489 F.3d at 212 (citing Barker, 407 U.S. at 532).

Keil has not made a showing that his ability to present a defense was impaired in any way by the delay in bringing him to trial.  He has not identified ant witnesses who were unavailable (or whose memories were dimmed) as a result of the delay or any evidence that was rendered unavailable.  Keil failed to make the required particularized showing of prejudice and the fourth *Barker* factor therefore favors the State.

Keil has not shown that the state courts' denial of the motions to quash his indictment was contrary to or an unreasonable application of Supreme Court precedent.  Accordingly, under the *Barker* factors, Keil's right to a speedy trial was not violated.

### B.    Motions To Suppress

Keil next argues that the Trial Court erred in denying his motions to suppress.  Both defense counsel and Keil filed various motions to suppress.[124]

At a hearing on the motions on May 2, 2011, the prosecution advised that it was not in possession of any evidence obtained from Keil, no identification procedure had been conducted, and no statements were made by Keil to law enforcement, and the counseled motions to suppress were therefore found to be moot.[125]  Keil argued a pro se motion to suppress evidence based on

---

[124]St. Rec. Vol. 9 of 19, Motion to Suppress Confession/Statement, 6/24/09; Motion to Suppress Identification, 6/24/09; Motion to Suppress Evidence, (undated); Motion to Suppress Stat's Evidence,6/25/09; Motion to Suppress Evidence Pursuant to Arts.: 703(A), (B), (D), (E), and (F) of the La. C. Cr. P., 7/31/11

[125]St. Rec. Vol. 6 of 19, Hearing Transcript, pp. 1184-1185, 5/2/11 St. Rec. Vol. 2 of 19, Minute Entry, 5/2/11.

inconsistencies between the 911 calls and the eyewitness statements to police.[126]  The Trial Court found that the credibility of the witnesses was a matter for the jury and denied the motion.[127]

In late July 2011, after Lieutenant Phelps advised the prosecution that at the time of his arrest Keil had made a statement that he had thrown the gun from the window of his vehicle, the prosecution advised the defense of the evidence and the matter was discussed during pretrial hearings.[128]  Shortly before trial, the prosecution filed a notice of intent to use Keil's statement.[129] At trial, the Trial Court held a hearing on the defense's motion to suppress testimony relating to Keil's alleged statement.[130]  Lieutenant Phelps testified that he was present at the time of Keil's arrest, Keil did not request an attorney after being read his *Miranda* rights, and that Keil told Phelps that he threw the gun out the window of his vehicle, although he could not recall the route he took from the scene to his mother's house.[131]  Phelps further testified that he and Captain Culpepper and another officer looked for the gun but were unable to find it.[132]  After hearing the testimony and the argument of the parties, the Trial Court denied the motion.[133]

---

[126]*Id.*, at pp. 1201-1215.

[127]*Id.*, at pp. 1211-1215.

[128]St. Rec. Vol. 4 of 19, Trial Transcript, pp. 779-785, 10/25/11.

[129]St. Rec. Vol. 10 of 19, Notice of Intent to Use Statements, 10/18/11.

[130]St. Rec. Vol. 4 of 19, Trial Transcript, pp. 758-785, 10/25/11; St. Rec. Vol. 2 of 19, Trial Minutes, 10/25/11.

[131]*Id.*, at pp. 760, 769-771, 776.

[132]*Id.,* at  pp.  762, 773-774.

[133]*Id.*, at pp. 779-785.

The Trial Court reopened the hearing to allow the defense to present the testimony of Geraldine Davis who testified that she never heard Keil make any statements to any police officers other than to ask for an attorney, but she did not know whether he had a conversation with Detective Phelps.[134]  The Trial Court found that the matter was one of credibility and maintained its prior ruling.[135]

Keil raised the issue of the denial of the motions to suppress in his application for post-conviction relief and the Louisiana Supreme Court found he had not met his post-conviction burden.[136]

With regard to the motion to suppress eyewitness testimony due to conflicting evidence or lack of credibility, there was no legal basis to suppress the testimony.  As previously explained, issues of credibility are matters for the jury to decide.  Keil is not entitled to relief as to that claim.

With regard to his motion to suppress his alleged statement to Phelps, the admissibility of a confession is a mixed question of law and fact.  *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007) (citing *Miller*, 474 U.S. at 112).  A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998).  In doing so, a federal habeas court must afford a presumption of

---

[134]*Id.,* at pp. 787-793.

[135]*Id.*, at pp. 796-797.

[136] *State ex rel. Keil v. State*, 249 So. 3d at 827; St. Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 8/3/18.

correctness to state courts' findings of fact, if they are fairly supported by the record. *Miller*, 474

U.S. at 117.  Similarly, the habeas corpus statute obliges federal judges to respect credibility

determinations made by the state court trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225

(5th Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982) ).

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a statement made by a person in custody

is inadmissible unless that person was informed that he has the right to have an attorney present

during questioning, that he has the right to remain silent, and that anything that he says may be

used against him. *Id.*, 384 U.S. at 444-45.  These rights may be waived so long as the waiver is

knowing and voluntary. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In this case, Keil does not allege that his statement was not knowing or involuntary; rather,

he alleges he did not make the statement alleged by Phelps.  In accordance with *Jackson v. Denno*,

378 U.S. 368 (1964), the Trial Court conducted a full evidentiary hearing on the motion to suppress

and the admissibility of the inculpatory statement.  The Trial Court received testimony from Phelps

as well as Keil's mother.  The Trial Court found that whether the statement was made was a matter

of witness credibility and, apparently crediting the testimony of Phelps, denied the motion.  As

previously explained, the court must respect credibility determinations made by the state court trier

of fact. *Pemberton*, 991 F.2d at 1225 (citing *Sumner*, 455 U.S. at 597).

Accordingly, the state courts' denial of relief on this issue is not contrary to, or an

unreasonable application of, Supreme Court precedent.  Keil is not entitled to relief on this issue.

## XI.  Incomplete Record on Appeal & Prosecutorial Misconduct Due to Jury Tampering (Claim Nos. 5 and 11)

In intertwined claims, Keil contends that the prosecutor committed misconduct when she

had an *ex parte* communication with a juror during deliberations and that he was denied his right

to appellate review in his direct appeal because the transcript of the hearing related to the incident was not produced to be included in the appellate record. Keil claims that the bailiff caught prosecutor Leigh Anne Wall conversing with one of the jurors during deliberations and reported the incident to the Trial Court. He further claims that the Trial Court held a hearing related to the matter at which prosecutor Wall testified under oath that she ran into the juror on the way to the bathroom. According to Keil, the Trial Court refused to dismiss the case and allowed the jury to continue to deliberate.

On direct appeal, Keil filed a motion to produce the audio of certain proceedings, including that related to the alleged hearing regarding the juror tampering.[137] He filed a pro se supplemental brief in which he alleged that prosecutor Wall was caught speaking with a juror during deliberations and the portion of the trial transcript relating to the incident was missing.[138] Appellate counsel filed a motion to supplement the appellate record to include the portion of trial transcript relating to the prosecutor's discussion with the juror.[139]

The Louisiana First Circuit denied the motion for production of the audio recordings.[140] On October 15, 2013, the Louisiana First Circuit issued an interim order to the court reporter ordering that she file a copy of the transcript of the hearing related to the *ex parte* communication with a juror or certify that a transcript could not be prepared.[141] On December 19, 2013, the court

---

[137]St. Rec. Vol. 7 of 19, Motion to Produce Audio of All Transcribed Documents of Aug.10, 2009, May 2 2011, and October 24-27, 2011, and November 14, 2011, 7/10/13.

[138] St. Rec. Vol. 7 of 19, Supplemental Brief, p. 24, 2012 KA 1976, 7/26/13.

[139]St. Rec. Vol. 7 of 19, Motion to Supplement Appellate Record, 8/29/13.

[140]St. Rec., Vol. 7 of 19, 1st Cir. Order, 2013 KA 1976, 8/27/13.

[141]St. Rec. Vol. 6 of 19, 1st Cir. Interim Order, 2012 KA 1976, 10/15/13.

reporter issued a reporter's certificate certifying that she had no knowledge of any *ex parte* discussion held between the prosecutor and the jury and that it was not reflected in the audio recording and if there was such a discussion, it did not occur in her presence and she therefore could not produce a transcript.[142]  Thereafter, the Louisiana First Circuit affirmed Keil's conviction and sentence.[143]  Keil's appellate counsel sought rehearing and, apparently not seeing the reporter's certificate, argued that the ruling was premature.[144]  The First Circuit denied rehearing and, while Keil raised the issue again in his pro se writ to the Louisiana Supreme Court, it failed to consider it as not timely filed.[145]

Keil raised the issues again in his application for post-conviction relief.  The Trial Court denied relief without explanation on August 10, 2015.[146]  The Louisiana First Circuit granted Keil's related writ application in part, vacating the denial with respect to claim relating to the *ex parte* communication, and ordered the Trial Court to determine whether the claim should be dismissed due to procedural deficiencies, denied on the merits or whether it required an evidentiary hearing.[147]

On March 22, 2016, the Trial Court found that Keil first raised the issue before the Trial Court at a hearing on his motion for resentencing on August 5, 2013.[148]  The Trial Court found no

---

[142]St. Rec. Vol. 6 of 19, Reporter's Certificate, 12/19/13.

[143]*Keil*, 2013 WL 7122536; St. Rec. Vol. 6 of 19, 1st Cir. Opinion, 2012 KA 1976, 12/17/13.

[144]St. Rec. Vol. 7 of 19, Application of Curtis A. Keil for Rehearing and Supporting Brief, 1/9/14

[145]St. Rec Vol. 16 of 19, 1st Cir. Oder, 2012 KA 1976, 1/16/14; La. S. Ct. Pro Se Supplemental Brief, 14 KH 572, 3/20/14 (postmarked 3/14/14); La. S. Ct. Order, 2014-KH-0572, 11/26/14; *State ex rel. Keil v. State*, 152 So. 3d 893 (La. 2014).

[146]St. Rec. Vol. 7 of 19, Trial Court Order, 8/10/15.

[147]St. Rec. Vol. 17 of 19, 1st Cir. Order, 2015 KW 1536, 11/18/15.

[148]St. Rec. Vol. 7 of 19, Judgment on Post-Conviction with Incorporated Reasons, p. 2, 3/24/16.

factual basis for the claim, explaining that the court record did not support Keil's claim that the incident occurred or that a hearing was held.[149]  The Trial Court further found that the incident did not occur and had it in fact occurred, it would have declared a mistrial on its own motion.[150]

Keil did not receive a copy of the judgment until August 2, 2016, and shortly thereafter sought rehearing and submitted a joint affidavit of his parents Lee Jerome Davis, Sr. and Geraldine Johnson-Davis in which they stated that shortly after deliberations began, the bailiff reported that he saw prosecutor Wall speaking to a juror and, that, during a hearing on the matter, both the prosecutor and the juror admitted to discussing the case.[151]  According to the affiants, Keil asked for a mistrial but the Trial Court instead sent the jury back to deliberate.[152]  The Trial Court denied the motion for rehearing on September 8, 2016.[153]  The Louisiana First Circuit denied Keil's related writ application without reasons.[154]  The Louisiana Supreme Court denied relief finding that Keil failed to carry his post-conviction burden of proof under La. Code Crim. P. art. 930.2 and his claims were repetitive under La. Code Crim. P. art. 930.4.[155]

To the extent Keil raises these issues as a violation of state law, his claims must fail.  As previously explained, federal habeas review may only consider constitutional violations and

---

[149]*Id.*, at p. 3.

[150]*Id.*

[151]St. Rec. Vol. 7 of 19, Washington Parish Clerk of Court Letter, 7/27/16; Application for Rehearing, 8/8/16; Joint Affidavit of Lee Jerome Davis Sr. and Geraldine Johnson-Davis, 8/4/16.

[152]St. Rec. Vol. 7 of 19, Joint Affidavit of Lee Jerome Davis Sr. and  Geraldine Johnson-Davis, 8/4/16.

[153]St. Rec. Vol. 7 of 19, Trial Court Order, 9/8/16.

[154]St. Rec. Vol. 18 of 19, 1st Cir. Writ Application, 9/9/16; 1st Cir Order, 2016 KW 1289, 12/12/16; *State v. Keil*, No. 2016 KW 1289, 2016 WL 7217281 (La. 1st Cir. Dec. 12, 2016).

[155]*State ex rel. Keil*, 249 So. 3d at 827; St. Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 8/3/18.

noncompliance with federal law as interpreted by the United States Supreme Court. *See Swarthout*, 562 U.S. at 219.

Keil does suggest that the failure to include the transcript of the hearing violated his Fifth Amendment right to due process. As a result, he has stated a cognizable claim for federal habeas review. *See Griffin v. Illinois*, 351 U.S. 12, 19-21 (1956). Keil claims the missing transcript denied him complete appellate review. It is indisputably true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete and accurate record. *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971). However, the Supreme Court has not held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief. To prevail on a claim that the record was inadequate, a petitioner must prove that the missing portion of the transcript actually prejudiced his appeal in some manner. *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed to show the absence of voir dire transcript prejudiced his appeal); *Bozeman v. Cain*, Civ. Action No. 09-8423, 2010 WL 2977393, at *4 (E.D. La. June 7, 2010), *report and recommendation adopted*, 2010 WL 2977402 (E.D. La. July 20, 2010) (finding that petitioner's claim failed when there was no actual prejudice resulting from the failure to transcript a bench conference).

Intertwined with his incomplete record claim, Keil claims prosecutorial misconduct based on the prosecutor's discussion of the case with a juror. Due Process requires that the criminally accused be tried by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Any private

communication [or] contact ... with a juror" *about the case pending before the jury* is

presumptively prejudicial.  *Remmer v. United States*, 347 U.S. 227, 229 (1954).  A federal habeas

court must defer to a state court's factual finding that there was no improper jury contact unless

the petitioner "presents 'clear and convincing' evidence to the contrary."  *Oliver v. Quarterman*,

541 F.3d 329, 342 (5th Cir. 2008) (quoting 28 U.S.C. § 2254(e)(1)).

In this case, Keil has not demonstrated that the state courts' rejection of his claims was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings.  There is no *credible* evidence that the prosecutor spoke with a juror or that a

hearing regarding the alleged jury tampering actually took place and the other evidence of record

confirms that there was no such hearing.  The minutes from October 27, 2011, simply reflect that

the jury retired for deliberations at 2:22 p.m. and court reconvened at 4:33 p.m. when the jury

returned a verdict.[156]  The court reporter certified that there was no audio of any discussion about

the prosecutor speaking to a juror.[157]  Neither Keil's trial counsel nor Keil mentioned the incident

in the post-trial motions or at sentencing.[158]  Keil did not submit any affidavits from any juror or

his trial counsel supporting his claim.  Given this evidence, there was no prosecutorial misconduct

and no transcript to produce.

While Keil submitted a joint affidavit from his parents attesting to the incident, it is not

reliable evidence.  First, the affidavit is dated nearly five years after Keil's trial and there is no

explanation why the affiants waited so long to come forward with the information.  *See Strayhorn*

---

[156]St. Rec. Vol. 1 of 19, Trial Minutes, 10/27/11.

[157]St. Rec. Vol. 6 of 19, Reporter's Certificate, 12/19/13.

[158]St. Rec. Vol. 2 of 19, Motion for Post-Verdict Judgement of Acquittal, 11/2/11; Pro Se Motion for Post Verdict Judgment of Acquittal Art. 821 C.Cr.P., La., 11/2/11; St. Rec. Vol. 5 of 19, Sentencing Transcript, .11/14/11.

*v. Booker*, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (noting that "[l]ong-delayed affidavits" are

"treated with a fair degree of skepticism").  Second, the affiants' familial relationship with Keil

renders their joint affidavit inherently suspect.  *See, e.g.*, *Milton v. Secretary, Department of

Corrections*, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's

affidavits suspect because they were executed by relatives).  Third, the affidavit, which claims that

the juror was required to testify regarding the alleged incident, is inconsistent with Keil's claim

that the prosecutor was the sole witness to testify.

The state courts' decision was neither contrary to, nor an unreasonable application of,

Supreme Court precedent.  Thus, Keil is not entitled to federal habeas corpus relief on these claims.

## XII.    <u>Erroneous Jury Instruction (Claim No. 8)</u>

Keil claims that the Trial Court gave erroneous jury instructions.  Keil does not identify

the alleged erroneous instruction or expound upon this claim.  Presumably, Keil contends that the

manslaughter instruction was erroneous.

Keil raised this claim in his post-conviction application.  The Trial Court denied relief

without explanation.[159]  In the last reasoned decision on the matter the Louisiana Supreme Court

found that Keil failed to meet his post-conviction burden of proof.[160]

The Trial Court charged the jury regarding the responsive verdict of manslaughter.  The

Trial Court charged the jury as follows:

> Manslaughter is the killing of a human being when the defendant has a
> specific intent to kill or inflict great bodily harm but the killing is committed in
> sudden passion or heat of blood immediately caused by provocation sufficient to
> deprive an average person of his self-control and cool reflection.

---

[159]St. Rec. Vol. 7of 19, Trial Court Order, 8/10/15.

[160]*State ex rel. Keil*, 249 So3d At 827; ST. Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 8/3/18.

"Sudden passion" and heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection" are not elements of the crime of manslaughter which must be proved by the State. Rather, they are mitigating factors, which you reasonably infer from the evidence produced or you find established by a preponderance of the evidence, and which diminish the degree of culpability of the defendant and reduce the grade of the offense from second degree murder to manslaughter.

To establish something by a "preponderance of the evidence" means simply to provide that something is more probable than not. Preponderance of the evidence means that when you weigh the supporting evidence, and compare it with the evidence opposed to it, on this issue, you find that it has more convincing force, and you believe that the existence of the sudden passion or heat of blood is more likely than not.

The defendant need not testify; the defendant need not produce every possible witness; and, the proof of sudden passion of provocation need not be beyond a reasonable doubt but only must ne by a preponderance of the evidence. Mere speculation, possibility or unsupported probability is not alone sufficient to support a finding of the element of "sudden passion or heat of blood" which finding would result in a verdict of manslaughter.

The state's burden of proof, as to all of the other elements of the crime as well as to disprove the defendant's claim of self-defense and/or justification for the homicide, is beyond a reasonable doubt.

Provocation shall not reduce a homicide to manslaughter if you find that the offender's blood had cooled, or that an average person's blood would have cooled, at the time the offense was committed.

I have already given you the definition of specific intent, and you are to use that definition in your deliberations of this lesser included crime.

Thus, in order to convict a defendant of manslaughter, you must find:

1) that the defendant killed the Terrance Donnell Harris; and,

2) that the defendant had a specific intent to kill or to inflict great bodily harm; **but**.

The killing was committed by provocation sufficient to deprive an average person of his self-control and cool reflection.

Thus, in order to convict the defendant of manslaughter:

You must find, beyond a reasonable doubt, that the state provided the killing and the specific intent on the part of the defendant to kill or inflict great bodily harm; and,

you must reasonably infer from the evidence, or find by a preponderance of the evidence, the mitigating element that the killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.[161]

---

[161]St. Rec. Vol. 1 of 19, Jury Instructions, pp. 11-12, 10/27/11.

Generally, the submission of improper jury instructions in a state criminal trial is not a basis for federal habeas relief. *See Estelle*, 502 U.S. at 71-72; *see also Weeks v. Scott*, 55 F.3d 1059, 1065 (5th Cir.1995). Federal habeas relief is warranted only where the petitioner demonstrates that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. When reviewing whether an allegedly erroneous jury instruction violated due process, the court's instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id* . The court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id*. Any errors are subject to harmless-error analysis. *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir.2002). Thus, even if the instruction was erroneous, habeas corpus relief is not warranted unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623-24; *Galvan*, 293 F.3d at 764-65.

Keil fails to demonstrate how the instruction on the elements of manslaughter violated his due process rights. The Trial Court accurately instructed the jury on the elements of manslaughter. *State v. Legrand*, 864 So.2d 89 (La. 2003). The jury charge was a correct statement of law and was not erroneous. *Id*. As previously explained, that instruction is authorized by state law. La. Code Crim. P. art. 814(A)(3). Thus, the Court need not engage in an harmless error analysis. Accordingly, there is no basis for holding that the Trial Court's instruction violated due process.

The state courts' rejection of Keil's claim was not contrary to and does not involve an unreasonable application of clearly established Supreme Court law. Keil is not entitled to relief as to this claim.

## XIII.    Ineffective Assistance of Counsel (Claim No. 7)

Keil alleges that he received ineffective assistance of counsel.  He claims his lead counsel joined the case a week before trial and did not have time to adequately prepare for trial.  He further faults his counsel's failure to subpoena witnesses to testify at trial.  He also claims that his counsel should have objected to the State's witnesses' in-court identification of him.  Finally, he faults his counsel for failing to object to the inclusion of manslaughter as a responsive verdict and the jury's verdict of manslaughter.

Keil raised the issue of ineffective assistance of counsel in his application for post-conviction relief.  The Trial Court found that the record showed there was nothing lacking in trial counsel's performance.[162]  In the last reasoned opinion, the Louisiana Supreme Court concluded that Keil failed to demonstrate that he received ineffective assistance of counsel under the *Strickland* standards.[163]

### A.    Standards of Review under *Strickland*

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective

---

[162]St. Rec. Vol. 7 of 19, Judgment of Post-Conviction with Incorporated Reasons, 2/22/16.

[163]*State ex rel. Keil*, 249 So. 3d at 827; St. Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 8/3/18.

assistance of counsel by a preponderance of the evidence.  *Montoya v. Johns*on, 226 F.3d 399, 408

(5th Cir. 2000); *Jernigan*, 980 F.2d at 296.  In deciding ineffective assistance claims, a court need

not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim

based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333,

348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct

failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v.*

*Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's

representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-

88.  The analysis of counsel's performance must take into account the reasonableness of counsel's

actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*,

466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must

"judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S.

at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within

a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466

U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was

unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at

689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless

clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th

Cir. 2004) (counsel's " 'conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates

the entire trial with obvious unfairness.' ") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing Strickland, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) ). This Court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994) ).

**B.**    **Failure to Investigate/Prepare for Trial**

Keil first claims that lead counsel was only on the case a week and did not have sufficient time to familiarize himself with the case and adequately prepare a defense.

The record reflects that Gross was represented by four attorneys. Initially, Keil had privately retained counsel who represented him until March 2009.[164] Thereafter, he was represented by Assistant Public Defender Pamela Hershey until approximately July 25, 2011 when she resigned from the office where after Assistant Public Defender John Almerico took over the case on August 1, 2011, at which time the Trial Court granted a motion to continue trial for more time to prepare.[165] Assistant Public Defender John Linder appeared as co-counsel at trial commencing on October 24, 2011.[166]

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at

---

[164]St. Rec. Vol. 9 of 19, Motion to Enroll, 0/31/08; Motion to Withdraw as Counsel of Record, 3/25/09

[165]St. Rec. Vol. 4 of 19, Trial Transcript, p. 741, 10/25/11 (indicating Hershey left the office in the summer of 2011); St. Rec. Vol. 2 of 19, Minute Entry, 8/1/11.

[166]St. Rec. Vol. 3 of 19, Trial Transcript, 10/24/11.

948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In this case, Keil has not addressed any failing in counsel's investigation or preparation of the case. His generalized claim, or mere use of the phrase, in that regard is wholly unsupported and conclusory. *Green*, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Even accepting Keil's claim that Linder did not join the case until the week before trial, the Public Defender's Office had represented Keil for over two years at the time of trial. Certainly, Linder had the benefit of the investigation and preparation previously performed by Hershey and Almerico. Keil has failed to establish that any further investigation was needed or what exculpatory information that investigation would have uncovered that was not already presented to the jury at trial. This is not sufficient to establish a deficiency in counsel's performance. *Moawad*, 143 F.3d at 948.

Moreover, even assuming Linder met with Keil on only one occasion, Keil has failed to demonstrate or even allege how additional meetings would have affected the outcome of the proceedings. *See Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005) (quoting *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988) ("there is no established minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel")*; Schwander v. Blackburn*, 750 F.2d 494, 499-500 (5th Cir. 1985) (brevity of consultation time between a defendant and his counsel does not in-and of-itself establish ineffective assistance of counsel).

Further, the trial transcript reflects that Linder, who acted as lead counsel at trial, was very familiar with the facts and evidence. He aggressively cross-examined the State's witnesses, made objections, and argued motions during trial. He presented defense witnesses in support of an actual innocence defense. He gave a thorough closing argument in which he attacked the State's case including the evidence and the credibility of its witnesses. Ultimately, he was able to obtain a lesser conviction of manslaughter.

The fact that counsel's strategy was not completely successful and that the jury found him guilty of manslaughter rather than acquitting him does not render defense counsel's performance constitutionally defective. Thus, the state courts' rejection of this claim was not contrary to Supreme Court precedent.

### C.    Failure to Call Defense Witnesses

Keil faults his counsel's failure to subpoena witnesses to testify at trial. He specifically claims that his mother would have testified as an alibi witness. He also presented a long list of other witnesses.

"'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir.2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832, at *3 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir.1997)). To prevail on a claim relating to the failure to call witnesses, the

petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray*, 265 F. App'x at 298). There must be a " 'reasonable probability' that the uncalled witness would have made [a] difference to the results." *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir.1985) (citation omitted).

Keil included a long list of proposed witnesses including his mother (Geraldine Davis), Reverend Johnny Causey, Duwane Magee, Walter Fland, Chonda Bridges, Garrand Smith, Willie Dorsie. He also referred to unnamed witnesses such as a gun powder residue specialist, the employee at the wrecker service, the 911 operator, and a blood spatter expert.[167] While Keil contends his mother would have verified his alibi, to date, he has yet to provide his actual alibi. He also fails to explain the substance of the expected testimony of the other witnesses. Further, he provides no evidence, such as affidavits from any of the proposed witnesses, demonstrating that they were available <u>and</u> would have testified in a manner beneficial to the defense. Therefore, Keil failed to meet his burden of proof with respect to this claim. *See*, *e.g.*, *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a

---

[167]St Rec. Vol. 8 of 19, Application for Rehearing, Exhibit E, 2012 KA 1976, 1/9/14.

petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on

that issue."); *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844,

at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar

matter, from the alleged favorable witnesses suggesting what they would have testified to, claims

of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director, TDCJ-CID*,

No. 06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit

(or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective

assistance.").

The state courts' denial of relief on this claim was not contrary to or an unreasonable

application of *Strickland*.  Keil is not entitled to relief on this claim.

### D.    Failure to Object to In-Court Identification

Keil next faults his trial counsel's failure to object to the "impermissibly suggestive" in-

court identification of him by State witnesses.

As previously explained above, each of the eyewitnesses who identified Keil was

personally familiar with him prior to the incident.  Considering that the witnesses knew Keil, there

was no basis to object and the Court cannot conclude that an objection to their in-court

identification of Keil would have created a reasonable probability that the result of the proceeding

would have been different.  *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel

is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585

n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to

raise a legally meritless claim."); *see also*, *Wood*, 503 F.3d at 413 (" '[f]ailure to raise meritless

objections is not ineffective lawyering; it is the very opposite.' ") (quoting *Clark v. Collins*, 19

F.3d 959, 966 (5th Cir. 1994) ); *Koch*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."). In any event, defense counsel tested the reliability of the witnesses' identification of Keil through cross-examination when he attacked their credibility. He also vigorously attacked their credibility during his closing argument. Keil has failed to show his counsel was deficient in failing to object to the witnesses in-court identification of Keil or any resulting prejudice.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Keil is not entitled to relief on this claim.

### E.    Failure to Object to the Inclusion of Manslaughter as a Responsive Verdict & Object to the Verdict

Keil's final claim of ineffective assistance of counsel is that he failed to object to the inclusion of manslaughter as a responsive verdict as well as to the jury's verdict of manslaughter.

On post-conviction review, the Trial Court found that the First Circuit had already found that the verdict was lawful and, further, that Keil had not demonstrated that, had counsel objected to the lesser included offense of manslaughter, the jury would have found him not guilty of second degree murder.[168] The Louisiana Supreme Court found that Keil failed to meet the *Strickland* standard.[169]

In this case, Keil cannot prove that his attorney's decision not to object to the inclusion of the manslaughter instruction or the resulting verdict was error as opposed to reasonable trial strategy. Under La. Rev. Stat. § 14:31B, the maximum sentencing exposure for a conviction of manslaughter is forty years whereas the sentencing exposure for a conviction of second degree

---

[168]St. Rec. Vol. 7 of 19, Judgment on Post-Conviction with Incorporated Reasons, 3/22/16.

[169]*State ex rel. Keil*, 249 So. 3d at 827; St Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 3/8/18.

murder is mandatory life.  La. Rev. Stat. § 14:30.1B.  Counsel may have reasoned that, given the strong evidence of Keil's identity as the perpetrator, if faced with the decision of second degree murder and not guilty, the jury would have found Keil guilty.  Counsel may have strategically decided that allowing the jury an option of a compromise verdict of manslaughter would benefit Keil because it would reduce his sentencing exposure for his crime, which ultimately it did.  Given that the Louisiana First Circuit found that there was sufficient evidence to sustain a conviction of second degree murder, Keil has not shown that counsel's strategy was unreasonable.  *See Zavala v. Quarterman*, Civ. No. B-08-230, 2009 WL 290182, *6-7, S. D. Tex. Feb. 5, 2009) (defense counsel's failure to object to or even request the inclusion of a jury instruction for the lesser-included offense of manslaughter was a strategic decision that was not professionally unreasonable when it was reasonable to believe that the petitioner would have been convicted of murder).

Nor has Keil established a reasonable probability that the result of the proceedings would have been different had counsel objected to the inclusion of a manslaughter instruction  Keil merely speculates that the jury would have acquitted him.  Such speculation is insufficient to demonstrate prejudice under *Strickland*.  Given the strong evidence supporting a second degree murder conviction, this Court cannot say that there is a reasonable probability that the jury would have acquitted Keil had it not been given the option of returning a lesser verdict of manslaughter.

The state district courts' decision rejecting the claim of ineffective assistance of trial counsel in this regard was neither contrary to nor involved an unreasonable application of clearly established federal law.

### XIV.   Newly Discovered Evidence (Claim No. 12)

Keil's final claim is that newly discovered evidence of post-trial misconduct by the former District Attorney, Assistant District Attorney Walls, and the Chief of Police warrant an order of acquittal and his immediate release.  Keil contends that Walter Reed, who served as the District Attorney at the time of Keil's trial, Walls and Culpepper were all indicted and convicted in federal court of charges of perjury, falsifying police records, fabricating evidence, malfeasance in office, and tampering with evidence.  He claims that this new evidence demonstrates that those involved in his prosecution practice illegal tactics and, therefore, his conviction should be overturned and a judgment of acquittal should be entered.

The State responds that Reed's conviction in federal court for improper use of campaign funds and funds belonging to the Office of the District Attorney is irrelevant to Keil's conviction.  It further contends that Wall and Culpepper were not indicted, but rather were named as defendants in a civil suit which similarly has no relevance to Keil's conviction.

In the last reasoned decision on the matter the Louisiana Supreme Court found that Keil failed to carry his burden of proof under La. Code Crim. P. 930.2.[170]

The United States Supreme Court has **not** recognized any free-standing actual innocence claim to support habeas relief.  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera*, 506 U.S. at 404-05); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir. 2013) (citing *McQuiggin*, 569 U.S. at 392 and *Herrera*, 506 U.S. at 400); *In re Warren*, 537 F. App'x 457 (5th Cir. 2013).  The Court instead has recognized that a

---

[170]*State ex rel. Keil*, 249 So. 3d at 827; St Rec. Vol. 19 of 19, La. S. Ct. Order, 2017-KH-0312, 3/8/18.

credible showing of actual innocence may act only as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim and allow for review of the merits. *McQuiggin*, 133 S. Ct. at 1931; *see*, *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (distinguishing the novel constitutional claim based on actual innocence asserted in *Herrera* from a claim of actual innocence that can, in a "narrow class of cases," excuse procedural default).

Keil does not allege actual innocence in a procedural context that can be considered by this Court. Rather, he claims that the alleged corruption of those involved in his prosecution somehow demonstrate that he was wrongfully accused and convicted. While it is true that Reed was recently convicted of wire and mail fraud, money laundering,[171] Keil has not demonstrated those offenses, which were related to the misuse of campaign funds, had anything to do with this prosecution or impacted his trial in any way. Similarly, Walls and Culpepper's involvement in a civil rights suit is irrelevant to his prosecution and conviction. Keil makes no showing that the alleged "newly discovered evidence" establishes that he did not commit the crime of which he was convicted. *See McGowen v. Thaler*, 675 F.3d 482, 499-500 (5th Cir. 2012) (to establish actual innocence, a petitioner must show that "as a factual matter, that he did not commit the crime of conviction.").

The state district courts' decision rejecting this claim was neither contrary to nor involved an unreasonable application of clearly established federal law.

## XV.  <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Keil's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

---

[171]*See United States v. Reed*, 908 F.3d 102 (5th Cir. 2018).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[172]

New Orleans, Louisiana, this 21st day of May, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[172]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.